# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

MANOLOTH VONGSOUVANH,

                              Plaintiff,

       v.                                 6:13-CV-1581
                                              (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

PETER W. ANTONOWICZ, ESQ., for Plaintiff
ELIZABETH D. ROTHSTEIN, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Thomas J. McAvoy, Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.  PROCEDURAL HISTORY

Plaintiff "protectively filed" applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") on April 29, 2011. (Administrative Transcript ("T") 10, 78-79, 152-65). Plaintiff alleged disability, beginning on August 26, 2008 involving, *inter alia*, degenerative disc disease, herniated discs, and annular tears. (T. 211, 216).

Plaintiff's applications were initially denied on August 29, 2011. (T. 10, 78-81). On August 2, 2012, Administrative Law Judge ("ALJ") Patrick Kilgannon conducted a hearing, at which plaintiff and a vocational expert testified. (T. 10, 40-

70).  The ALJ denied plaintiff's applications in a decision dated August 31, 2012 (T.

10-21), which became the final decision of the Commissioner when the Appeals

Council denied plaintiff's request for review on November 14, 2013.  (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that he or she is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . . ."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the Commissioner
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which meets or equals the criteria of an impairment listed in

2

Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

As of the date of the administrative hearing in August 2012, plaintiff was 35 years old. (T. 47). Plaintiff completed ninth grade, but subsequently earned a GED. (T. 47). Plaintiff reported an approximately ten-year employment history as, *inter alia*, a construction worker and a furniture mover. (T. 48-49, 62-63, 189-93, 209, 217, 234-36). Plaintiff's most recent work as a furniture mover in Florida was interrupted, in 2007, by a back injury, and ended, in 2008, after another job-related back injury, for which plaintiff ultimately received a lump-sum worker's compensation settlement. (T. 49-50, 280, 382, 401-02, 417). In 2011, he moved from Florida to New York to reside

with his parents, upon whom plaintiff relied for assistance in many aspects of his personal care.  (T. 48, 51, 56, 57-58, 224-26, 391).

Plaintiff complained of "constant, unremitting, and excruciating" back and leg pain, which started to dramatically limit his daily activities in 2008, and then became worse, despite medication and various treatment regimens, including, most recently, the implantation of a spinal cord stimulator in January 2012.  (T. 14-15, 50, 57-61, 22-33, 456, 479, 482, 485).  Plaintiff claimed that his pain precluded him from sitting or standing for more than a few minutes at a time, required him to constantly change positions and lay down frequently, and substantially interfered with his sleep.  (T. 52-55, 228-30, 232-33, 479-86).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 13, 14-19).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   <u>ALJ's DECISION</u>

At step one of the sequential disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 26, 2008–his alleged onset date.  (T. 12).  The ALJ then found, at step two, that plaintiff's degenerative disc disease of the lumbar spine, with bulges at L4-5 and L5-S1, was a "severe" impairment.  (T. 12-13).  At step three, the ALJ found that plaintiff's impairment did not individually, or in combination, meet or equal any of the criteria of any section of the Listing of Impairments, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1,

including the listing for disorders of the spine.  (T. 13- 14).

Prior to proceeding to step four, the ALJ assessed plaintiff's RFC and concluded that he retained the ability to perform nearly the full range of "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (T. 14-19).  Specifically, the ALJ determined that plaintiff could lift up to 20 pounds occasionally, and lift or carry up to 10 pounds frequently; stand or walk for approximately six hours and sit for approximately six hours per eight-hour workday, with normal breaks; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, crouch, kneel, and crawl.  (T. 14).  While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ decided that the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible, to the extent they were inconsistent with the ALJ's RFC determination.  (T. 14-15, 17-18).

At step four, based on the testimony of the vocational expert ("VE"), the ALJ found that plaintiff could not perform his past relevant work, which required "heavy" or "medium" exertion.  (T. 19, 62-63).  The ALJ proceeded to step five and, relying on the VE's testimony,[1] found that plaintiff was not disabled because jobs existed in significant numbers in the national economy that plaintiff could perform.  (T. 20-21, 63-69).

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ erred in his RFC assessment, by not giving

---

[1] The VE answered the ALJ's alternative hypothetical questions in a way that would indicate that plaintiff could perform both light and sedentary unskilled work.  (T. 63-66).

adequate weight to the opinions of plaintiff's treating physician, Dr. Rina Davis, and by improperly weighing the other medical evidence. Plaintiff argues further that the ALJ's credibility determination with respect to plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms was not supported by substantial evidence. (Pl.'s Brf. at 10-23, Dkt. No. 13).

For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical evidence and finds that his RFC determination, particularly with respect to plaintiff's capacity for prolonged standing/walking and sitting, was not supported by substantial evidence. As a result, the ALJ's evaluation of plaintiff's credibility, the ALJ's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court recommends a remand for further administrative proceedings to properly assess the medical evidence and plaintiff's credibility in connection with the Commissioner's RFC determination.

## VI.  RFC/TREATING PHYSICIAN/CREDIBILITY

### A.  Legal Standards

#### 1.  RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform nearly the full range of "light work." Under 20 C.F.R. §§ 404.1567(b) & 416.967(b), light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss

of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 83-10 elaborates on the requirements of light work:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

SSR 83-10, 1983 WL 31251, at *5-6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

### 2.    Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3.    Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable

9

us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3).

**B.    Analysis**

As noted above, the ALJ found that plaintiff could perform nearly the full range light work, and, in particular, could stand or walk for approximately six hours in an eight-hour workday, and could sit for approximately six hours in a workday. (T. 14). In reaching this RFC determination, the ALJ discounted or rejected the only medical opinion evidence regarding plaintiff's capacity for prolonged standing, walking, and sitting, as well as plaintiff's statements about his ability to stand, walk, and sit for sustained periods. The ALJ referenced "the objective imaging and clinical examination findings," and in particular "the nearly normal neurologic findings (including normal reflexes, normal motor strength, normal sensation and negative straight leg raise)" as the basis for his findings regarding the plaintiff's "ability to stand or walk" and, presumably, to sit. (T. 19). This court concludes that the ALJ has improperly substituted his own judgment for competent medical evidence and that his RFC determination regarding plaintiff's ability to stand, walk, and/or sit for prolonged periods is not supported by substantial evidence. The ALJ's erroneous evaluation of the medical evidence also tainted his evaluation of plaintiff's credibility and his ultimate determination that plaintiff was not disabled.

Plaintiff was treated by Southwest Florida Rehabilitation and Pain Management Associates between October 2008 and November 2010 for chronic back pain that radiated to his legs. (T. 276-389). CT imaging of plaintiff's lumbar spine in June

2009 demonstrated "a severe annular tear[2] and protrusion/herniation at the L4-5 level which appears more severe than reported on the MRI from the past" and bilateral mild neural foraminal narrowing.[3]  A smaller protruded disc was observed at the L5-S1 level with mild neural foraminal narrowing, but no spinal stenosis.[4]  (T. 272). Provocative discography[5] in June 2009 revealed "strong positive results at the L4-5 level indicating severe disc disease" and "moderate reproduction of symptoms at [the L5-S1] level, but not nearly as positive as the L4-5 level."[6]  (T. 271, 339 ("[t]he diskogram was concordant with severe pain when the L4-5 disc space was injected, to a lesser extent at L5-S1"), 340).  Plaintiff did not get significant relief from

---

[2] An intervertebral disc . . . has a strong outer ring of fibers, called the annulus fibrosus . . . . If it tears and no disc material is ruptured, this is called an annular tear.  The outer 1/3 of the disc's annular ring is highly innervated with pain fibers. Thus, if a tear involves the outer 1/3 it may be extremely painful. This tear will heal with scar tissue over time but is more prone to future tears and injury. Studies also indicate that annular tears may lead to premature degeneration of the disc, endplates, and facet joints." http://www.spinemd.com/symptoms-conditions/annular-tear

[3] "Spinal nerves pass through an opening in the spinal column known as the foramen. The process of disc degeneration or bulging causes the foramen to become narrower." http://www.spinaldisorders.com/neural-foraminal-narrowing.htm

[4] "In lumbar stenosis, the spinal nerve roots in the lower back are compressed, or choked, and this can produce symptoms of sciatica–tingling, weakness or numbness that radiates from the low back and into the buttocks and legs–especially with activity." http://www.spine-health.com/conditions/spinal-stenosis/what-spinal-stenosis

[5] "Provocative discography is an imaging-guided procedure in which a contrast agent is injected into the nucleus pulposus of the intervertebral disc.  It provides both anatomical and functional information about a disc suspected to be diseased.  Following intradiscal contrast injection, disc morphology is usually assessed on radiographs or computed tomography (CT), or both.  The functional evaluation consists of pain provocation and careful assessment of the patient's response to pain."  http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3097593/

[6] A lumbar spine MRI in June 2009 revealed "disc desiccation with focal disc protrusions/focal herniations . . . at the L4-5 and L5-S1 level" but no spinal stenosis.  (T. 273). EMG/nerve studies in early 2009 were "unremarkable."  (T. 365, 369).

12

conservative treatment such as physical therapy, epidural injections, and non-narcotic pain medication. (T. 290, 303, 313, 340, 346, 378). Plaintiff did somewhat better with narcotic pain medication, but still had substantial radiating pain with physical activity. (T. 282, 290, 300, 303, 325, 328). On numerous occasions, the treating provider at Southwest Florida Rehabilitation and Pain Management Associates found that plaintiff's pain behaviors "are within the context of disease." (T. 298, 302, 327, 354, 379, 384).

While he was treated in Florida, defendant typically displayed a normal gait, had undiminished strength in his lower extremities, and straight leg raising was negative bilaterally[7]; although he generally had severe restrictions on the range of motion of his lumbar spine, with pain elicited in all directions. (T. 282, 292, 298-99, 302-03, 309, 314-15, 320, 324, 327-28, 342-43, 348, 354-55). Plaintiff's treating physician in Florida–Dr. Mehrberg– noted that plaintiff "had trouble sitting in one position for any length of time . . . and has trouble standing and walking for long distances" and that plaintiff's pain "is worse with standing for any length of time [and] sitting." (T. 318, 352). In October 2010, in connection with plaintiff's last visit, Dr. Mehrberg noted that plaintiff was "not able to work at his prior job secondary to pain." (T. 282).[8] Plaintiff was scheduled for spinal fusion surgery in August 2009, but surgery was not approved by worker's compensation while plaintiff was in

---

[7] Positive straight leg raise results are indicative of a herniated disc. http://www.webmd.com/back-pain/medical-history-and-physical-exam-for-a-herniated-disc.

[8] The ALJ noted that plaintiff did not see his treating doctor in Florida between February and October 2010. (T.15-16). Dr. Mehrberg's notes indicate that plaintiff was not able to afford follow-up visits after he settled his worker's compensation case. (T. 280).

Florida.  (T. 282, 290, 300, 307, 313, 318, 325).

In early 2011, after settling his worker's compensation case in Florida, plaintiff moved to New York to live with his parents.  (T. 48, 50, 280, 391).  After qualifying for Medicaid in New York, plaintiff was able to resume medical treatment for his continuing, radiating back pain and associated numbness; he was referred to a neurosurgeon and a pain clinic.  (T. 391-92, 395-97, 401-402, 417).  A lumbar MRI on April 28, 2011 revealed small, broad-based disc herniation, minimal foraminal narrowing, and evidence of an annular tear at the L4-5 level and small, predominantly central disc herniation and evidence of an annular tear at the L5-S1 level.  (403-04, 413-14, 418, 425).  The two neurosurgeons who examined plaintiff found that he had an antalgic gait and moderate limitations in his lumbar flexibility, but that he had negative straight leg raising bilaterally and full motor strength in his lower extremities.  (T. 402, 417-18).  One of the surgeons, Dr. Warren Wulff opined that spine fusion for plaintiff's problem "is not very predictable," and recommended that plaintiff pursue a "dorsal column stimulator."  (T. 418).[9]

On July 12, 2011, Ibrahim Opaleye, M.D. conducted a consultative internal medical examination of the plaintiff.  (T. 420-23).  Dr. Opaleye observed that plaintiff appeared to be in acute pain, was bending over while walking, and was limping.  (T. 421).  Plaintiff experienced acute pain getting on and off the exam table and had difficulty standing up from the chair.  (T. 421).  He declined to submit to testing of his

---

[9] The ALJ noted the "importance" of the fact that plaintiff did not have spinal fusion surgery after he moved to New York (T. 15), notwithstanding the fact that the neurosurgeon in New York apparently recommended that plaintiff consider a dorsal column stimulator instead of fusion surgery.

range of motion for his lumbar spine because of claimed pain. (T. 422). Partial testing of plaintiff's hips while he was seated indicated reduced range of motion and pain. (T. 422). Straight leg raising results were negative bilaterally. (T. 422). There was no evidence of sensory deficit noted in plaintiff's upper and lower extremities and his strength was 5/5 bilaterally in his extremities. (T. 423). Dr. Opaleye concluded, *inter alia*, that plaintiff had "[m]oderate-to-marked limitations with prolonged standing, walking, bending, squatting, lifting and carrying heavy objects." (T. 423).

The ALJ only gave Dr. Opaleye's opinions only some weight, finding that objective findings did not support such severe restrictions on plaintiff's exertional and postural activities, and concluding that the consulting examiner's restrictions were based, ast least in part, on plaintiff's subjective presentation. (T. 19). The ALJ also noted that the "pain stimulator" was implanted in plaintiff after the examination by Dr. Opaleye, "so his functioning should have improved since then." (T. 19).

Plaintiff was referred to the New York Spine & Wellness Center, where he was examined on eight occasions between June 2011 and July 2012. (T. 424-28, 457-61, 479-84, 489-90, 495-98). On June 22, 2011, plaintiff complained of severe back pain and presented with an antalgic gait, severe muscle tenderness over his lumbar spine, a very restricted range of motion in the spine, and reduced strength (3/5) in his lower extremities. After reviewing plaintiff's MRI from April 28th, he was diagnosed, *inter alia*, with lumbar degenerative disc disease without myelopathy (nerve compression), and he was scheduled for trigger point injections. (T. 424-25). On August 23, 2011, plaintiff reported that the trigger point injections did not help his burning, sharp,

radiating pain, and he was scheduled for a spinal cord simulator trial. (T. 427-28). Plaintiff reported a 55% reduction of pain in his legs, and the ability to perform daily activities with less pain, after the stimulator trial, and a thoracic dorsal column stimulator was surgically implanted in plaintiff on January 26, 2012. (T. 456, 461). Plaintiff initially reported, in February 2012, that the permanent stimulator reduced his back pain by 20% and his leg pain by 50%. (T. 457). However, in April 2012, plaintiff reported that his symptoms were worsening and that the stimulator was not helping his constant, sharp, shooting, and throbbing back pain, which was exacerbated by, *inter alia*, sitting, standing, and walking. (T. 482). By June 25, 2012, plaintiff advised that his sharp, burning, radiating back pain was continuing to worsen, and was exacerbated by, *inter alia*, standing, walking, and bending. (T. 479). Plaintiff met with a technician to reprogram his stimulator on June 25th in an effort to improve its effectiveness in reducing plaintiff's pain. (T. 481, 489). A lumbar spine MRI of plaintiff on June 28, 2012 confirmed mild disc bulging at the L3-4, L4-5, and L5-S1 levels, with no significant central canal or foraminal stenosis. (T. 478).

On July 31, 2012, Nurse Practitioner Zoryana Moreau prepared the only comprehensive Medical Source Statement (Physical) of record for the plaintiff, which was cosigned by Rina Davis, M.D. and several others on the medical staff of the New York Spine & Wellness Center. (T. 495-98). The RFC evaluation concluded, *inter alia*, that plaintiff could stand and/or walk for only one hour or less during an eight-hour day, and could only sit in an upright position for one hour or less during a workday. (T. 495) The evaluation opined that plaintiff would need to lay down

intermittently throughout the day at an unpredictable frequency (T. 495), and that pain and other symptoms would cause plaintiff to be off task for at least 50% of an eight-hour workday (T. 498). The statement estimated that plaintiff would miss work more than four days per month because of his symptoms and impairments. (T. 498).

The ALJ concluded that the opinion of the New York Spine & Wellness Center was entitled to "very little weight" because there was "nothing in the objective record" to support such a reduced ability to, *inter alia*, sit, stand, and walk. (T. 19). The ALJ found that the MRI and CT-scans did not reveal any significant stenosis or nerve involvement that would account for the level of pain and debility claimed by plaintiff and validated by his medical providers. (T. 17-18, 19). The ALJ's decision mentions some of the objective testing and medical findings that confirmed plaintiff's pain despite the absence of evidence of spinal nerve compression, including the June 2009 provocative discography which strongly reproduced plaintiff's pain symptoms at the L4-5 level. (T. 15). However, the ALJ failed to reconcile his lay opinion–that plaintiff's stated pain and limitations were inconsistent with the objective medical evidence–with the fact that, notwithstanding the lack of test results indicating neurological compromise of plaintiff's spine, his medical providers responded to the diagnostic testing and plaintiff's claims of pain by providing or recommending aggressive treatment, including narcotic pain medication and surgery. The ALJ also apparently assumed that the reprogramming of plaintiff's stimulator on June 25, 2012 would ameliorate the motor weakness and other symptoms that plaintiff displayed on that date, although there is no medical evidence of record that supports that

assumption.  (T. 19, 481).[10]

This court concludes that the ALJ erred in his RFC determination that plaintiff could stand, walk, and sit for six hours of an eight-hour workday by improperly substituting his own judgment for the only competent medical opinions of record.  *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing  *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion)).  As noted, the ALJ rejected the only medical opinion evidence of record regarding plaintiff's ability to stand, walk, and sit–the opinion of plaintiff's treating doctor[11] that plaintiff could only stand, walk, and sit for one hour each during an eight-hour workday and the opinion of the consulting examiner that plaintiff had moderate to marked limitations

---

[10] The plaintiff also met with the technician for the company which provided the dorsal column stimulator on April 25th, to "trouble shoot the burning pain in midback[,]" (T. 484), but, based on the subsequent examination of plaintiff on June 25th, the technician could not address plaintiff's worsening pain.

[11] The Medical Source Statement of the New York Spine & Wellness Center was prepared by a nurse practitioner–not an "acceptable medical source" whose opinions are entitled to controlling weight.  However, a nurse practitioner is qualified to present evidence with respect to the severity of a claimant's impairments and the effect of those impairments on a claimant's ability to work.  SSR 06-3p, 2006 WL 2329939, at *2.  In any event, the RFC statement was co-signed by Dr. Davis, who also co-signed reports relating to at least two prior examinations of plaintiff.  (T. 427, 457, 498).  Given the absence of evidence that the Medical Source Statement did not reflect the opinion of Dr. Davis, it should be deemed to be the report of an acceptable medical source.  *See, e.g., Djuzo v. Commissioner of Social Sec.*, No. 5:13-CV-272 (GLS/ESH), 2014 WL 5823104, at *4 & n.10 (N.D.N.Y. Nov. 7, 2014) ("When a treating physician signs a report prepared by a nurse practitioner . . ., the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views.") (collecting cases).

18

with prolonged standing and walking. *See, e.g., Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *DiVetro v. Commissioner of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12-13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported); *Maginnis v. Astrue*, No. 5:11-CV-36, 2012 WL 2046883, at *6-7 (D. Vt. Mar. 14, 2012) (the ALJ erred because his RFC determination as to plaintiff's ability to lift and carry and to stand and/or walk during an eight-hour day, was not supported by the opinions of either treating doctor, to which the ALJ purportedly gave significant weight) (Rep't-Rec.), *adopted*, 2012 WL 2019701, at *1 (D. Vt. June 5, 2012) (the Magistrate Judge properly concluded that the RFC determination was not supported by substantial evidence because the ALJ gave more weight to the opinions of non-examining and non-treating sources over physicians who had fairly extensive treating relationships with the plaintiff). The ALJ did not cite any medical evidence, and this court found none in the record, that would suggest that plaintiff was capable of the prolonged sitting, standing, and/or

walking during an eight-hour workday, as the ALJ concluded.[12]  *See, e.g. Andrews v. Astrue*, 7:10-CV-1202 (RFT), 2012 WL 3613078, at *9 (N.D.N.Y. Aug. 21, 2012) (there is no support in the medical record for the ALJ's RFC assessment that plaintiff can engage in light work; the ALJ failed to point to what evidence supports his findings, but instead, simply discounts the other medical opinions).[13]

Defense counsel argues that Dr. Opaleye's silence regarding limitations on plaintiff's ability to sit supports the ALJ's conclusion that he could sit for six hours in an eight-hour day and perform light work.  (Def.'s Brf. at 12, Dkt. No. 14).  The ALJ gave Dr. Opaleye's opinion "some weight," but did not cite it to support a finding regarding plaintiff's ability to sit for prolonged periods.  Indeed, such an interpretation

[12] The ALJ cited plaintiff's daily activities as evidence undermining the credibility of his statements about his physical limitations, including those related to his inability to sit for prolonged periods:  in particular, plaintiff's ability to travel between New York and Florida and his statement in January 2011 that he could perform his daily activities with less pain during his spinal cord stimulator trial.  (T. 15).  However, as noted, the medical evidence indicates that the implanted stimulator proved to be substantially less effective in managing plaintiff's back pain by April and June 2012, and his pain continued to be exacerbated by prolonged sitting, standing, and walking.  Furthermore, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves."  *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).  *See also, Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (the ALJ erred when he concluded that plaintiff could meet the sitting requirements of sedentary work because she cooked and shopped for herself, used public transportation, and managed to remain seated for one long plane ride).

[13] The record did include a Physical RFC Assessment that opined that plaintiff could stand/walk and/or sit six hours in an eight-hour workday.  (T. 73).  The ALJ did not cite this assessment, presumably because it was not entitled to any weight, as it was prepared, not by a doctor, but by a "Single Decision Maker."  (T. 77).  *Andrews v. Astrue*, 2012 WL 3613078, at *9 (the ALJ correctly did not accord any weight to a disability analyst's RFC opinion because she is not a physician).  Interestingly, in this case, as in *Andrews*, the ALJ's RFC determination appeared to reflect the findings of the lay disability analyst, but had no support in the competent medical opinion evidence).

of Dr. Opaleye's report would be unreasonable and would not be supported by substantial evidence. Dr. Opaleye noted plaintiff's complaints that "even sitting . . . makes the pain worse" and that "sitting or laying down long also worsen the pain." (T. 420). The consulting doctor's medical source statement found "moderate-to-marked limitations with prolonged standing, walking, bending, squatting, lifting, and carrying heavy objects" and mild-to-moderate limitations with activities requiring fine visual acuity." (T. 423). The omission of any conclusion regarding prolonged sitting could not have been reasonably construed by the ALJ as a conclusion that plaintiff had no limitations with respect to prolonged sitting, without seeking clarification from the doctor. *Cf. DiVetro v. Commissioner of Social Sec.*, 2008 WL 3930032, at *12 (consulting examiner's opinion that plaintiff has no "gross limitation" in her ability to sit does not supporting the ALJ's finding that plaintiff could sit for eight hours in a given workday).

In sum, this court concludes that the ALJ erred in his evaluation of the medical evidence, and that his RFC determination, particularly the finding that plaintiff was able to stand, walk, and sit for approximately six hours each during a workday, was not supported by substantial evidence. As noted above, the ALJ's finding regarding plaintiff's credibility was largely based on his opinion that the objective medical evidence did not reveal any significant spinal nerve compression that would account for the level of pain and debility claimed by plaintiff. (T. 15, 17-18, 19). Because the ALJ erred in substituting this lay opinion for the competent medical opinions of record, his finding that plaintiff's statements about the intensity, persistence, and

limiting effects of his symptoms were not credible was also flawed. The ALJ relied on his erroneous RFC finding concerning plaintiff's ability to stand, walk, and sit for prolonged periods in questioning the VE, and in the ALJ's analysis at step five. (T. 19-21, 63-68). Hence, the ALJ's ultimate determination that plaintiff was not disabled was also tainted.[14] On remand, the Commissioner should properly address the totality of the medical opinion and other evidence, re-assess plaintiff's credibility, and present the evidence upon which the Commissioner relies to support the RFC determination.

## VII. NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a

---

[14] The fact that the ALJ elicited an opinion from the VE indicating that there were unskilled "sedentary" jobs in the national economy that plaintiff could perform (T. 65-67) does not make the ALJ's error at step five harmless. Sedentary work generally requires the ability to sit for six hours of an eight-hour workday and to walk or stand for no more than about two hours of a workday. SSR 96-9p, 1996 WL 374185, at *3. As noted above, the ALJ's finding that plaintiff could sit for six hours in a workday was not supported by substantial evidence, so any finding, on the current record, that plaintiff could perform sedentary work would also have been made in error.

proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 10, 2015

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**